## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JAMES STACEY,                                        Case No. 1:14-cv-842

                Plaintiff,                          Dlott, J.
                                                   Bowman, M.J.

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

### REPORT AND RECOMMENDATION

Plaintiff James Stacey filed this Social Security appeal in order to challenge the Defendant's determination that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

Plaintiff filed an application for Supplemental Security Income ("SSI") on July 21, 2011, alleging disability beginning on the same date[1] based upon HIV/AIDS and nerve damage, as well as depression. Plaintiff's application was denied initially and upon reconsideration, and he timely requested an evidentiary hearing. On May 1, 2013, Plaintiff appeared with counsel at a hearing held before Administrative Law Judge ("ALJ") Greg Canyon in Cincinnati, Ohio. (Tr. 27-63). Plaintiff provided testimony, as did

---

[1]Although Plaintiff initially alleged a disability onset date of April 1, 2007, he subsequently amended his alleged onset date to July 2011, to coincide with the date of his application.

a vocational expert.  On January 10, 2013, the ALJ issued a written decision in which he concluded that Plaintiff was not disabled.  (Tr. 12-22).  The Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner.  Plaintiff timely filed this judicial appeal.

Plaintiff was 42 years old at the time of the ALJ's decision.  He has a limited ninth grade education and has no past relevant work, to the extent that his prior unskilled work did "not appear to have reached the level of substantial gainful activity."  (Tr. 21). Even if that work as a laborer and packer had been substantial,[2] the ALJ determined that he could no longer perform it, because he can no longer perform work at the medium exertional level due to his severe impairments of HIV/AIDS, neuropathy, and depression.  (Tr. 14, 21).

Despite severe impairments, the ALJ found that none of the impairments or combination thereof met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability.  (Tr. 15).  Instead, the ALJ concluded that Plaintiff's impairments limited his residual functional capacity ("RFC") to a limited range of light work.  Specifically, Plaintiff

> cannot climb ladders, ropes, or scaffolds or work around hazards such as unprotected heights or dangerous machinery.  The claimant is limited to occasional operation of foot controls and frequent use of the left upper extremity for handling and fingering.  The claimant is limited to performing unskilled, simple, repetitive tasks and he can have only occasional brief superficial contact with co-workers, supervisors, and the public.  The jobs should not involve rapid production pace work or strict production quotas. The claimant is limited to performing jobs in a relatively static work

---

[2]The record reflects that Plaintiff quit working for reasons unrelated to any claimed disability.  He variously reported that he was laid off after a factory slow-down, and/or that he chose not to work for a period of years when a boyfriend was supporting him.

environment in which there is very little, if any, change in the work routine from one day to the next.

(Tr. 16).

Based upon the testimony of the vocational expert, the ALJ found that Plaintiff could perform several representative jobs that exist in significant numbers in the national and local economies, including the jobs of packer, general factory worker, and cleaner at the light exertional level. (Tr. 22). Therefore, the ALJ determined that Plaintiff was not disabled. (*Id.*).

Plaintiff argues that the ALJ erred by failing to find that he met or equaled a Listing level impairment based upon his HIV/AIDS status, which would have entitled him to a presumption of disability. Alternatively, Plaintiff argues that the ALJ erred by discounting the opinions of his treating therapist and a treating physician concerning the level of his social impairment.

**II.  Analysis**

**A.  Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported

by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can

perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459

F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she

is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits

must present sufficient evidence to show that, during the relevant time period, he or she

suffered an impairment, or combination of impairments, expected to last at least twelve

months, that left him or her unable to perform any job in the national economy.  42

U.S.C. § 423(d)(1)(A).

**B.  Specific Errors**

**1.  Listing Level Severity of HIV Symptoms**

Plaintiff first asserts that the ALJ erred by failing to find Plaintiff to be entitled to a

presumption of disability at Step 3 of the sequential analysis, based upon Plaintiff's

diagnosis of HIV/AIDS.  When a plaintiff alleges that his impairments meet or equal a

listing, he must present specific medical findings that satisfy all of the criteria for the

particular listing.  *See* 20 C.F.R. §§416.920(a)(4)(iii), 416.925, 416.926; *Sullivan v.

Zebley*, 493 U.S. 521, 530-32 (1990).

Immune systems disorders, including HIV, are organized in different categories,

with HIV infection having its own relatively extensive listing category, located at 20

C.F.R. §404, Subpt. P, App. 1, 14.08.   Most of the subcategories within Listing 14.08

require specific findings, such as diagnosis of HIV accompanied by one of several types

of bacterial infection (Listing 14.08A), or a similarly specific fungal infection (Listing

14.08B), or HIV encephalopathy (14.08G), wasting syndrome (14.08H), and so on.   In

contrast to Listings 14.08A through 14.08J, Listing 14.08K provides somewhat of a

"catch-all" HIV category for those who do not qualify for another HIV Listing.  In order to satisfy Listing 14.08K, a claimant must have "documentation as described in 14.00F" that shows:

> K. Repeated (as defined in 14.00I3) manifestations of HIV infection, including those listed in 14.08A–J, but without the requisite findings for those listings (for example, carcinoma of the cervix not meeting the criteria in 14.08E, diarrhea not meeting the criteria in 14.08I), or other manifestations (for example, oral hairy leukoplakia, myositis, pancreatitis, hepatitis, peripheral neuropathy, glucose intolerance, muscle weakness, cognitive or other mental limitation) resulting in significant, documented symptoms or signs (for example, severe fatigue, fever, malaise, involuntary weight loss, pain, night sweats, nausea, vomiting, headaches, or insomnia) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Listing 14.08K, Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P., App. 1.

The ALJ began his analysis with a discussion of Plaintiff's longstanding HIV status, including the stability of his chronic condition since his alleged disability onset date in 2011, and the relative success of five years of treatment:

> [Plaintiff] was diagnosed with HIV in June 2008….  He has been started on a regimen of antiviral medications with good success….  After the claimant's diagnosis, his CD4 counts dipped but thereafter rebounded substantially….  The claimant's CD4 helper cell count was 445[3] on March 17, 2011….  His CD4 count was also measured at 368 and his viral load was 180.  His viral load was described as "reasonably well controlled" at

---

[3]14.08F explains that in individuals with HIV, the "extent of immune suppression correlates with the level or rate of decline of the CD4 count.  Generally, when the CD4 count is below 200….the susceptibility to opportunistic infection is greatly increased.  Although a reduced CD4 count alone does not establish a definitive diagnosis of HIV infection, a CD4 count below 200 does offer supportive evidence when there are clinical findings, but not a definitive diagnosis of an opportunistic infection(s).  However, a reduced CD4 count alone does not document the severity or functional consequences of HIV infection.

> the time of the September 2011 visit…. The claimant's CD4 count
> thereafter rose to 523 with a viral load of only 27 on May 16, 2012….

(Tr. 14). The ALJ gave "some weight" to the assessment of a physician who opined that Plaintiff's HIV condition "was not severe and that he could perform medium level work." (Tr. 19). However, the ALJ disagreed with that opinion by finding Plaintiff's HIV status to be a "severe" impairment at Step 2. Nevertheless, the ALJ determined that Plaintiff's "HIV/AIDS is under reasonable control with medications and …the extent of any immunologic-related fatigue the claimant may experience is not so severe that he lacks sufficient stamina to work competitively. (Tr. 20).[4]

Citing Magistrate Judge Litkovitz's Report and Recommendation in *Scherpenberg v. Com'r*, Case No. 1:12-cv-478, 2013 WL 3455843 (S.D. Ohio, July 9, 2013), subsequently adopted as the opinion of the court at 2013 WL 3982741 (Aug. 1, 2013), Plaintiff briefly argues that this case should be remanded based upon the ALJ's failure to consider all subsections of Listing 14.08. The undersigned respectfully disagrees, and finds *Scherpenberg* to be easily distinguishable. The ALJ in that case completely ignored uncontroverted evidence that the plaintiff met Listing 14.08J, based upon sinusitis infections requiring repeated hospitalizations and intravenous treatments multiple times in much less than a 12-month period. *Id.* at 4. The ALJ's "one-sentence analysis" was severely "limited to whether plaintiff met or equaled Listing 14.08A, B, and C and [was] silent on the remaining eight subparts of the Listing" including the highly relevant Listing 14.08J. *Id.* No similar evidence exists in the record of this case, nor

---

[4]Plaintiff reported to his therapist in February 2010 that recent blood work had shown that the HIV virus was "undetectable" at that time, although by March 2011, it was detected again. (Tr. 401, 421). In August 2011, he again reported the virus was undetectable. (Tr. 495).

was the ALJ's analysis limited to a single sentence consideration of whether the plaintiff met the criteria of 14.08A, B, or C.

In at least one subsequent R&R involving similar facts and issues confined to Listing 14.08K, Magistrate Judge Litkovitz rejected a claimant's argument that the ALJ was required to set forth additional analysis. *See Crawford v. Com'r*, 1:13-cv-451, 2014 WL 6606135 (Nov. 20, 2014). As in *Crawford*, the ALJ here appeared to consider <u>all</u> possible categories of an HIV/AIDS Listing under 14.08 at Step 3, but determined that Plaintiff did not meet or equal any of the subcategories that would constitute a relevant Listing.

> [H]e does not have described bacterial infections, fungal infections, protozoan or helminthic infections, viral infections, malignant neoplasms, conditions of skin or mucous membranes with lesions, hermatologic abnormalities, neurological abnormalities, HIV wasting syndrome, diarrhea resulting in intravenous hydration or tube feeding, cardiomyopathy, nephropathy, or other infections listed in that section.
>
> The record does not demonstrate that the claimant's diarrhea has required intravenous hydration, intravenous alimentation, or tube feeding. There is also no evidence that the claimant has had significant, documented symptoms or signs (e.g., fatigue fever, malaise, weight loss, pain, night sweats) and market restriction of activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace as explained in more detail below.

(Tr. 15). The ALJ's reference to Plaintiff's diarrhea expressly addressed Listing 14.08I. That listing is for individuals who suffer from HIV-related diarrhea lasting "for 1 month or longer, resistant to treatment, and requiring intravenous hydration, intravenous alimentation, or tube feeding." The ALJ's analysis of the various subparts under Listing 14.08 was more than adequate under existing case law. *Accord Luster v. Com'r*, 2015 WL 1439910 (E.D. Mich. March 27, 2015)(adopting R&R and rejecting claim that ALJ

was required to spell out in detail each subpart of Listing 14.08, where the plaintiff's HIV infection was relatively stable and controlled); *see also Kelley II v. Com'r of Soc. Sec.*, 2013 WL 1187920 (E.D. Mich., Feb. 8, 2013)(rejecting 14.08K claim where – despite plaintiff's claims of various symptoms of rash, diarrhea and fatigue, he failed to show he experienced any symptomology "consistently").

Plaintiff now claims that the ALJ found the first three criteria of the "catch-all" HIV Listing 14.08K. Plaintiff contends that the ALJ affirmatively found: (1) a diagnosis of HIV infection; (2) repeated manifestations "such as neuropathy, or diarrhea" and (3) significant symptoms "such as pain or fatigue" to be satisfied. (Doc. 5 at 5). Contrary to Plaintiff's assertion, the ALJ's analysis does not include clearly stated findings "that show claimant satisfied the first three parts of this listing [14.08K]." (*Id.*). For example, although the ALJ did find HIV infection and <u>some</u> symptoms, he did not make a specific finding that Plaintiff satisfied Listing 14.08K criteria for "[r]epeated (as defined in 14.00I3) manifestations of HIV infection," nor did he make any specific finding that Plaintiff's diarrhea met the requirement for "significant" symptoms. *See* Listing 14.08K; *see also* Doc. 7 at 6, n.4 (Defendant's Memorandum in Opposition). On the other hand, the ALJ did state that Plaintiff has "some neuropathy associated with his HIV in his legs and left arm," (Tr. 14), as well as some chronic diarrhea, though not enough to satisfy Listing 14.08I.

Regardless of whether the ALJ's analysis otherwise supports Listing 14.08K, however, the ALJ clearly determined that Plaintiff had only "mild" restriction in activities of daily living, and "moderate difficulties" in social functioning and in concentration,

persistence or pace.  (Tr. 15-16).  In order to satisfy Listing 14.08K,[5] Plaintiff was required to prove "marked" limitations in at least one of those categories.  In this appeal, Plaintiff challenges the ALJ's failure to find that Plaintiff has marked limitations in social functioning.

The ALJ determined that Plaintiff suffers from only moderate limitations in that area.  To support a finding of "marked" social limitations, Plaintiff cites evidence that Plaintiff:  (1) interacts frequently only with his mother; (2) interacts with siblings mostly by phone; (3) has a single friend; (4) does not interact much with others due to fear of being judged and trying to stay out of trouble; (5) has anxiety and panic attacks; (6) has occasional thoughts of suicide; (7) has a history of sexual abuse in group homes; (8) sits around and mopes; (9) does not trust people because of his difficult childhood; (10) has superficial contact with non-family members.  (Doc. 5 at 6, citing ALJ's analysis of the record at Tr. 15-20).  The undersigned disagrees with Plaintiff's contention that this list of symptoms from Plaintiff's historical records[6] somehow <u>mandates</u> a finding of more than "moderate" limitations in social functioning.

---

[5]In his reply memorandum, Plaintiff argues that remand is also required for the ALJ to more completely evaluate Plaintiff's "intractable diarrhea" in connection with Listing 14.08K.  (Doc. 9 at 7).  Because the undersigned finds substantial evidence to support the ALJ's determination that Plaintiff had only "moderate" limitations in social functioning, remand to determine whether Plaintiff experienced symptoms that satisfied other portions of Listing 14.08K is unnecessary.  However, the ALJ clearly did determine (with citation to the record) that Plaintiff's reported diarrhea "only amounts to 3 to 4 lo[o]se bowel movements per day, which could be accommodated with normal breaks…."  (Tr. 19).

[6]In his reply memorandum, Plaintiff criticizes the Commissioner's citation to records that reflect "positive social interactions," arguing that those records predate his alleged disability onset date.  The criticism is ironic to the extent that the vast majority of Plaintiff's cited support for a "marked" impairment (including most of Ms. Vondrell's records) also predates his claimed onset date.  Plaintiff cannot have it both ways.  Unfortunately for Plaintiff, and as discussed *infra*, his most recent records discuss the improvement in his mental functioning, to the point where Ms. Vondrell reduced his appointments.

Plaintiff further argues that by including a limitation to "superficial" contact with non-family members, the ALJ *must* have found that he has "more than just a moderate social limitation." (*Id.*). However, like Plaintiff's "list of symptoms" argument, this second argument is wholly unsupported by any citation to case law or regulations, and ultimately fails to persuade. Many individuals with only moderate symptoms have limitations to "superficial" contact with co-workers or supervisors.

Plaintiff suggests that the ALJ committed additional error by citing to Plaintiff's ability to interact with his family members and a friend. (Tr. 15-16). Plaintiff maintains that this was error as a matter of law, because the preamble to Listing 14.08, at Listing 14.00I-7, states that the Commissioner will find a

> marked limitation in maintaining social functioning if you have a serious limitation in social interaction on a sustained basis because of symptoms, such as pain, severe fatigue, anxiety, or difficulty concentrating, or a pattern of exacerbation and remission, caused by your immune system disorder (including manifestations of the disorder) or its treatment, *even if you are able to communicate with close friends or relatives.*

(*Id.*, emphasis added). Plaintiff suggests that the italicized language "forbids adjudicators from using a claimant's family relationships or relationship with a close friend to judge whether his social functioning was otherwise markedly limited." (Doc. 5 at 7, emphasis added). Plaintiff also briefly references a portion of the listing that notes that in-patient hospitalization is not required to prove disability, implying that the ALJ's reference to Plaintiff's lack of psychiatric hospitalizations constitutes additional legal error.

Again, Plaintiff misinterprets the regulatory scheme. Listing 14.00I-7 does not "forbid" consideration of a claimant's "relationships" with his close friends or relatives in determining the level of impairment in social functioning. Rather, the referenced

language stands only for the proposition that a marked level of impairment may be found "even if" the claimant is "able to communicate with close friends or relatives." Similarly, whether or not a claimant has been hospitalized for psychiatric symptoms (or for any other reasons) is simply one factor that may be considered in evaluating the overall claim of disability; there is no evidence that the ALJ improperly weighed that factor in the context of his analysis. (*See* Tr. 20-21). The main consideration in determining the degree of social impairment is whether the social limitation is "caused by" the HIV or its treatment, and whether the limitation is both "serious" and "sustained." In short, the undersigned finds no legal error in the ALJ's consideration of all of Plaintiff's social interactions to determine the level of his impairment in social functioning, including but not limited to Plaintiff's relationships with close friends and relatives.

## 2. Evaluation of Medical Opinion Evidence

Plaintiff's second assertion of error closely relates to his first. He claims that the ALJ erred by rejecting the opinion of Plaintiff's therapist, Professional Clinical Counselor Lisa Vondrell, that Plaintiff suffers from "marked" social limitations. (Tr. 607). Ms. Vondrell, who was not a treating physician or psychologist,[7] opined on a check-list form supplied by counsel that Plaintiff's social limitations were "marked."

Plaintiff contends that in failing to accept the therapist's opinions, the ALJ disregarded SSR 06-3p. Plaintiff points out that he had more than 75 interactions with

---

[7]Plaintiff's reliance on the "treating physician rule" is misplaced. Ms. Vondrell does not qualify as an acceptable medical source, much less as a treating "physician." Additionally, even if Ms. Vondrell were a treating psychologist, any RFC "opinions" would not be entitled to controlling weight because the determination of a plaintiff's RFC, like the ultimate determination of disability, is reserved to the Commissioner.

Ms. Vondrell over a five-year period, beginning in 2008. However, most of those interactions occurred well before Plaintiff's alleged onset of disability in July 2011. In fact, Plaintiff's condition had improved to the point that Ms. Vondrell suggested, and Plaintiff agreed, that he reduce his counseling sessions with her from weekly to bi-weekly soon after his alleged onset date. (Tr. 451). Therapy visits were subsequently reduced to once every three weeks. (Tr. 18).

In evaluating Ms. Vondrell's opinions, the ALJ correctly pointed out that Ms. Vondrell is not an acceptable medical source. (Tr. 20); see 20 C.F.R. §§416.913(a), (*Id*), 416.927(a)(2); SSR 06-3p. He explained that he was giving "[l]ittle weight" to her assessment because that assessment was "not consistent with her progress notes, which show only moderate level depressive symptoms." (Tr. 20). In another portion of the ALJ's opinion, he references the Centerpoint treatment records as showing a history of "at the most, moderate level depression" and "dispel[ling] any possibility that the claimant is socially avoidant. (Tr. 19). Additionally, Ms. Vondrell reported on April 12, 2012 "that although the claimant had missed scheduled appointments for a variety of reasons, overall, he has been compliant with this treatment…and that during therapy sessions, the claimant is verbal, cooperative, and utilized his time appropriately and effectively…. (*Id.*).

Plaintiff contends that the ALJ did not cite to sufficient data in the records to support his conclusion that Plaintiff has only moderate limitations. He criticizes the ALJ's reference to his treatment compliance as a basis for minimizing his symptoms, and the ALJ's failure to cite to specific pages of the Centerpoint records. (Doc. 5 at 8-9; *see also* Tr. 19-20).

13

The undersigned has carefully reviewed all of Ms. Vondrell's clinical notes and records, to which the ALJ made several references, despite the lack of specific page citation. As the Defendant points out, those records reflect that Plaintiff had a boyfriend, was able to make new friends at the library,[8] attend social functions, had interests in music and movies, was able to go shopping, use public transportation, and seek help from third parties, including a lawyer, a housing manager, and assistance programs. (Doc. 7 at 8-9, quoting Tr. 365-66, 374, 377, 379, 380, 382, 383, 394, 397, 404, 407, 412, 415, 421, 433, 439, 443, 451, 586). Thus, the record as a whole supports the ALJ's conclusion that Ms. Vondrell's opinion that Plaintiff has "marked" social limitations is "not consistent with her progress notes." Based upon the undersigned's review, the ALJ's analysis is supported by substantial evidence in the record as a whole. Ms. Vondrell's notes simply do not provide any significant support for her assessment that Plaintiff suffers from "marked" impairment in social functioning.

The undersigned further notes that Ms. Vondrell's rather dire assessments conflict with her records in multiple ways, not only in the realm of social functioning. For example, in January 2013, Ms. Vondrell completed a form in which she indicated that Plaintiff suffers from "recurrent severe panic attacks," and "repeated episodes of decompensation, each of extended duration." (Tr. 604-605). However, there is no evidence in the record at all of episodes of decompensation.

---

[8]As Plaintiff points out, the reference to these new friendships was dated March 2011. (Tr. 421) The undersigned does not agree with Plaintiff's characterization of that evidence as wholly irrelevant based upon the date being "well before" the onset of his claimed disability, particularly given that there is no evidence of the subsequent loss of the friendships or some other downturn in Plaintiff's social abilities. To the contrary, the decrease in therapy appointments and other clinical records reflect improvement.

14

Ms. Vondrell checked boxes on the same form suggesting that Plaintiff suffers from "extreme" limitations (defined as no useful ability to function) in his ability to accept instructions and criticisms from supervisors, behave in an emotionally stable manner, relate predictably in social situations, and "marked" limitations (defined as seriously limited but not precluded) in five additional work-related areas. (Tr. 606-607). Again, such an assessment contrasts with Ms. Vondrell's clinical notes. For example, at a March 2012 appointment, Plaintiff reported being excited about walking his sister down the aisle at her upcoming wedding, enjoying attending a recent dinner put on for volunteers, and looking forward to attending the same dinner in 2013. (Tr. 586). In April 12, 2012, Ms. Vondrell updated Plaintiff's "individual service plan," noting that he has made "very good" progress on family and interpersonal relationships, and "appears to have positive relationships with mother, boyfriend, and the Lord." (Tr. 570). Similarly, in an update dated August 30, 2012, Ms. Vondrell wrote that Plaintiff's "circumstances are much more stable than they were when he began treatment, as evidenced by stable housing, Medicaid, and cash assistance. Clt's moods are much more stable with ongoing therapy and assistance…." (Tr. 574, 579).

In addition to Ms. Vondrell's notes, Plaintiff relies upon a similar cursory assessment completed by James Robertson, M.D. that opines that Plaintiff has "marked" impairments both in social functioning and in his activities of daily living. (Tr. 353). Unlike Ms. Vondrell, Dr. Robertson is a treating physician, and his opinions ordinarily would be entitled to "controlling weight." Despite the Defendant's failure to address the support provided by Dr. Robertson's opinion, I find no reversible error because the weight given to his opinions by the ALJ comported with the regulations.

The relevant regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Com'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)).  Thus, the treating physician rule requires the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians."  *See Blakley v. Com'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

The ALJ did not find Dr. Robertson's opinions to be entitled to the treating physician presumption, because his opinions were not "well-supported by medically acceptable…techniques," and were "inconsistent with the other substantial evidence" in Plaintiff's records. 20 C.F.R. §404.1527(c)(2). Dr. Robertson treated Plaintiff for his HIV/AIDS, but completed assessment forms in 2011 and again in 2013 that provided opinions on both Plaintiff's physical and mental abilities.  The ALJ explained the weight given to Dr. Robertson's varying opinions, and the reasons why, as follows:

> The undersigned gives no weight to the Physicians Statement of Medical Disability Eligibility form submitted by Dr. Robertson.  …Dr. Robertson reported that the claimant has lumbar radiculopathy, resulting in low back pain and leg pain that limits this claimant's ability to walk.  However, there is no evidence of a significant verbegrogenic condition in this case.  The claimant does have some neuropathy related to his HIV but there is no clinical evidence to support that this symptom has reached the level of severity that would be considered disabling.
>
> The undersigned gives some weight to the assessment of Dr. Robertson on a Basic Medical form…. This assessment is consistent with an ability to do light work and is more consistent with the treatment evidence of record.  Less weight is given to his mental assessment at 17F, page 43.  Dr. Robertson is an infectious disease expert and not a mental health professional.
>
> Less weight is also given to the subsequent assessment of Dr. Robertson in April 2013….  [T]he claimant's laboratory studies of record indicate that his HIV/AIDS is under reasonable control with medications and that the extent of any immunologic-related fatigue the claimant may experience is not so severe that he lacks sufficient stamina to work competitively.

(Tr. 20).  The ALJ further stated that "the treating opinions appear to be based on the claimant's subjective complaints rather than the clinical findings."  (Tr. 21).

Additional substantial evidence exists in the record that supports the ALJ's determination of only a moderate level of impairment in social functioning.  For example, the ALJ noted a number of inconsistencies that cast significant doubt on Plaintiff's testimony in several areas, including the area of social functioning.  (Tr. 18-19).  The ALJ also considered the opinions of acceptable medical sources who opined that Plaintiff's social limitations were either "mild" or "moderate."  For example, in September 2011, after conducting a full mental health consulting examination, Dr. Berg opined that Plaintiff suffered from only "mild" depressive symptoms, and "some" social difficulties.  (Tr. 332-337).  The ALJ went over Dr. Berg's findings and opinions in some detail, noting that he gave "great weight" to his assessment.  (Tr. 20).  Subsequently, after a

17

full records review in February 2012, Dr. Lewin opined that Plaintiff had only moderate social limitations.  (Tr. 84).  The ALJ also gave "great weight" to Dr. Lewin's consulting opinion.

Plaintiff argues that the ALJ's reliance on Dr. Berg and on Dr. Lewin was error, to the extent that Dr. Berg lacked access to "voluminous charts" of records after his exam, leading up to the hearing date.  Plaintiff argues that Dr. Lewin's opinion suffers from the same defect because she relied primarily on Dr. Berg's report, and lacked access to "nearly 400 pages of medical charts and treatment notes."  (Doc. 9 at 5, citing Tr. 340-731).  First, most of the referenced pages have no relevance to the evaluation of Plaintiff's social functioning.  To the extent that some of the referenced records would have been relevant to the formulation of opinions by evaluating consultants, the controlling Sixth Circuit case is *Blakley,* 581 F.3d 406.

In *Blakley,* the court reversed on grounds that the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Blakley*, 581 F.3d at 409 (*quoting Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)).  Under *Blakley*, then, it is not necessarily error for an ALJ to give the most weight to the opinion of a non-examining consultant who has failed to review a complete record, but he should articulate his reasons for doing so.  If he fails to provide sufficient reasons, his opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis.*

18

It is true that the ALJ failed to comply with *Blakley* to the extent that he failed to sufficiently articulate that neither Dr. Lewin nor Dr. Berg had access to all of Plaintiff's records, particularly Ms. Vondrell's most recent clinical notes.  However, as should be evident from the above discussion, the undersigned recommends affirming the ALJ's decision because any error was harmless on the record presented.  That Drs. Berg and Lewin did not have access to Plaintiff's complete psychological records at the time of their review does not disqualify their opinions, because the ALJ himself both had access to and considered the complete records.  *See McGrew v. Com'r of Soc. Sec.*, 343 Fed. Appx. 26 (6th Cir. 2009).

In his reply, Plaintiff asserts that relying upon the ALJ to consider those records meant that the ALJ "play[ed] doctor."  That is not correct.  Courts have criticized ALJs for "playing doctor" when they come up with an independent medical diagnosis that differs from the diagnosis provided by a physician.  While there are gradations of such errors in the case law, in general, an ALJ who reviews and interprets the medical evidence in formulating an RFC is doing no more than is required of him or her under the regulatory scheme.  In this case, the ALJ did not overstep that legitimate role.

Last, Plaintiff complains that the ALJ's reliance on Plaintiff's daily activities was misplaced, because none of those activities are "inconsistent with the significant emotional limits placed by the therapist on plaintiff's ability to function outside the safety of his apartment building."  (Doc. 5 at 10).  Plaintiff relies on *Gayheart v. Com'r*, 710 F.3d 365 (6th Cir. 2013) to argue that his ability to perform some social activities does not mean that he can perform work "on a sustained basis."  *Id.* at 378.  While Plaintiff's statement is true as far as it goes, it reflects no more than a very broad general

proposition. In *Gayheart*, the Sixth Circuit found error in the ALJ's rejection of a therapist's opinion that the plaintiff's mental limitations included an inability to tolerate public places. The ALJ based the rejection of the opinion – which was consistent with the opinion of a treating psychiatrist - because of limited evidence that the plaintiff had been able to take once a month shopping trips with his wife despite significant anxiety and panic attacks. *Id.* In the course of discussing multiple grounds for reversal, the court pointed out that the slim evidence relied upon by the ALJ did not support a conclusion "that Gayheart is able to go out into public places on a sustained basis." *Id.*

The cursory nature of Plaintiff's *Gayheart* argument may explain Defendant's failure to fully address it. Still, the argument provides no basis for remand. The fact that Plaintiff's daily activity level could be read as "not inconsistent" with a more severe level of impairment does not mean that the ALJ was required to find that Plaintiff had "marked" limitations in social functioning. Substantial evidence has been described as "a fairly low bar," *Hickey-Haynes v. Barnhart*, 116 Fed. Appx. 718, 726 (6th Cir. 2004), consisting of "more than a scintilla but less than a preponderance" of evidence. *Norman v. Astrue*, 694 F. Supp.2d 738, 740 (N.D. Ohio 2010)(citing *Richardson v. Perales*, 402 U.S. at 401)). The undersigned can only reiterate: "The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *Felisky v. Bowen*, 35 F.3d at 1035. The ALJ's decision was within a reasonable "zone of choice" in this case.

### III. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff SSI be **AFFIRMED** as supported by substantial evidence

in the record as a whole.  Because no issues remain in dispute, this case should be closed.

            */s Stephanie K. Bowman*
            Stephanie K. Bowman
            United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JAMES STACEY,                                    Case No. 1:14-cv-842

             Plaintiff,              Dlott, J.
                                                 Bowman, M.J.
    v.


COMMISSIONER OF SOCIAL SECURITY,

             Defendant.


**NOTICE**


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).