UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

James Stacey,                                     :     Case No. 1:14-cv-842
                                                  :
          Plaintiff,                              :
                                                  :
vs.                                               :
                                                  :
Carolyn W. Colvin, Acting Commissioner of         :
Social Security,                                  :
                                                  :
          Defendant.                              :

## ORDER

Before the Court are Plaintiff's objections to the Magistrate Judge's Report and
Recommendation.  (Doc. 11)  The Magistrate Judge recommended that the Court affirm
the ALJ's decision denying Plaintiff disability benefits because it is supported by
substantial evidence.  (Doc.10)  Plaintiff objects and raises several claims of error; the
Commissioner has not responded to those objections.  For the following reasons, the
Court grants in part Plaintiff's objections, and will remand the case for further
consideration by the Commissioner.

## FACTUAL BACKGROUND

James Stacey filed an application for Social Security disability benefits on July
21, 2011, claiming a disability onset date of April 1, 2007.  Stacey was diagnosed with
HIV/AIDS in June 2008.  He began taking antiviral medications, and his blood tests
showed improvement in his CD4 helper cell levels and viral loads by March 17, 2011.
At a January 2, 2012 visit with his physician, his viral load was described as "reasonably
well controlled." (TR 546, Ex. 10F at 73)  By May 2012, his helper cell count had
increased and his viral load had decreased.  Stacey was diagnosed with depression

(adjustment disorder with depressed mood and history of polysubstance abuse) in June

2007.  (TR 301, Ex. 1F at 3)  His medical records also show that he has been treated

for high blood pressure, high cholesterol, and high triglycerides.

After Stacey's claim was administratively denied, he requested an ALJ hearing,

which took place on May 1, 2013.  (TR 29-63)  The ALJ subsequently issued a written

decision (TR 12-22), finding that Stacey has severe impairments but had the residual

functional capacity to perform light work with additional limitations.  Based on a

vocational expert's testimony that jobs existed in the local and national economy that

Stacey could perform within the RFC's limitations, the ALJ concluded that he was not

disabled.

Specifically, the ALJ found that Stacey has severe impairments of HIV/AIDS,

neuropathy, and depression.  He found that these impairments, individually or together,

did not meet or equal Listing 14.08, for HIV/AIDS, or Listing 12.04 for affective disorders

(including depression).  With respect to Listing 14.08, the ALJ found that Stacey does

not have any of the disorders or disease manifestations that are described in subparts

(A) through (J) of that Listing.  These subparts require specific findings and documented

manifestation of disorders (such as chronic bacterial infections, HIV encephalopathy,

wasting syndrome, and others) that Stacey does not have.  Listing 14.08K is the final

subcategory for HIV-AIDS disability, and it states:

> K.  Repeated (as defined in 14.00I3) manifestations of HIV infection,
> including those listed in 14.08A–J, but without the requisite findings for
> those listings (for example, carcinoma of the cervix not meeting the criteria
> in 14.08E, diarrhea not meeting the criteria in 14.08I), or other
> manifestations (for example, oral hairy leukoplakia, myositis, pancreatitis,
> hepatitis, peripheral neuropathy, glucose intolerance, muscle weakness,
> cognitive or other mental limitation) resulting in significant, documented

symptoms or signs (for example, severe fatigue, fever, malaise, involuntary weight loss, pain, night sweats, nausea, vomiting, headaches, or insomnia) **and** one of the following at the **marked** level:

>    1. Limitation of activities of daily living.
>    2. Limitation in maintaining social functioning.
>    3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Listing 14.08K, Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P., App. 1 (emphasis added).

The ALJ concluded that Stacey was not disabled under any part of Listing 14.08, because he

> ... does not have described bacterial infections, fungal infections, protozoan or helminthic infections, viral infections, malignant neoplasms, conditions of skin or mucous membranes with lesions, hematologic abnormalities, neurological abnormalities, HIV wasting syndrome, diarrhea resulting in intravenous hydration or tube feeding, cardiomyopathy, nephropathy, or other infections listed in that section.
>
> The record does not demonstrate that the claimant's diarrhea has required intravenous hydration, intravenous alimentation, or tube feeding. There is also no evidence that the claimant has had significant, documented symptoms or signs (e.g., fatigue, fever, malaise, weight loss, pain, night sweats) and marked restriction or activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace as explained in more detail below.

(TR 15)

The ALJ also concluded that Stacey's depression did not meet or equal Listing 12.04, which requires a finding of two marked limitations in functioning or repeated episodes of decompensation. Noting that a "marked" limitation "means more than moderate but less than extreme," the ALJ found that Stacey has moderate difficulties in social functioning and in concentration, persistence or pace:

-3-

He interacts frequently with his mother who lives across the hall from him, and he interacts with his sister and brother, mostly by phone but they also come to visit with him. He also has a friend that he visits and he reported that he talks to her a lot about his situation and his health. The claimant testified that he does not interact much with others because he feels like he is judged and he tries to stay out of trouble.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. At the psychological evaluation, the claimant reportedly maintained attention and concentration and he functioned at a moderate pace (Exhibit 4F). The claimant also testified that he was able to concentrate on a television program if it interested him.

(TR 15-16)

The ALJ also found that Stacey has only mild restrictions in daily living. He lives alone, manages his personal care and his medications, and takes care of his cat. The ALJ found that he is able to function independently both at home and away from home.

The ALJ then addressed Stacey's residual functional capacity. Based on the record evidence, he found that Stacey was able to perform light work with the following additional restrictions: he cannot climb ladders, ropes, or scaffolds or work around unprotected heights, dangerous machinery or other hazards; he may only occasionally operate foot controls, and only frequently use his left hand/arm for handling and fingering. He is limited to performing unskilled, simple, repetitive tasks with only occasional brief, superficial contact with co-workers, supervisors, and the public. The jobs should not involve rapid production pace work or strict production quotas. He is limited to jobs in a relatively static work environment in which there is very little, if any, change in the work routine from one day to the next. (TR 16)

In formulating this capacity, the ALJ noted Stacey's descriptions of the side effects of his medications, which leave him tired and drained. If he is at home, he lies

-4-

down to watch television, and dozes off up to six times a day.  The medications also cause him problems with concentration.  He has loose bowel movements 4-5 times day about four days a week.  Sometimes he has a frequent and urgent need to urinate or have a bowel movement.  He also suffers from anxiety and panic attacks, and when those happen he talks to his mother or to his therapist.  He goes to the grocery store twice a week, and is able to leave his apartment.  He reported neuropathy on his left side, into his arms and his left leg and foot that causes "a gnawing, tingly feeling."  (TR 17)  He often rates his pain at 8 out of 10, and his left hand will go numb causing him to drop things.  The leg and hand numbness is not constant, and when it does occur is helped by his pain medication (Tylenol). The ALJ recited Stacey's testimony describing his physical limitations (he could lift 20 pounds but not lift anything continuously; he gets tired of standing after 15-30 minutes, and would get tired after walking 15 minutes).  Stacey likes to cook but does not do so because he dozes off or forgets that something is on the stove.  On a daily basis, he watches television, naps, plays with his cat, watches his fish, sits on the porch, smokes cigarettes, and talks to his mother.  He claims that he is almost always weak due to the diarrhea.

The ALJ found inconsistencies between Stacey's testimony and the records, somewhat eroding his credibility.  Stacey reported to Dr. Robertson (his treating infectious disease physician) in April 2013 that he had 2 to 4 watery stools 3-4 times a week.  Stacey reported chronic pain and numbness in his left leg.  But the ALJ found that Dr. Robertson's written assessment form did not cite any neurological manifestations of his AIDS/HIV, and the record lacks results of EMG testing that might

confirm neuropathy.[1]  During the consultative psychological exam by Dr. Berg in September 2011, Stacey reported having no difficulty sitting, walking, or standing, but reported back and leg pain upon bending, stooping, or lifting.  (TR 332, Ex. 4F at 3)  The ALJ also found that Stacey's social functioning "does not appear to be as impaired as alleged."  (TR 18)  Stacey interacts with his family and one friend, and is able to have superficial contact with people when he goes shopping or goes to medical appointments.  He can take the bus and walk to his appointments.  Regarding the side effects of his medications, the ALJ concluded they were adequately controlled and would not interfere with an ability to maintain a dependable work schedule.  His reported frequency of diarrhea varied throughout the record, and the ALJ believed that problem could be accommodated with normal work breaks.  His complaints of neuropathy were addressed in the RFC restrictions on using foot and hand controls.

The ALJ then addressed the medical opinion evidence, giving "some weight" to the February 6, 2012 state disability records review by Dr. Das.  (TR 77-90, Ex. 3A)  Dr. Das opined that Stacey could perform medium level work, but the ALJ limited him to restricted light work, in deference to Stacey's complaints of fatigue.  He gave no weight to Dr. Robertson's November 7, 2012 report (TR 601, Ex. 14F) that Stacey has lumbar radiculopathy, finding no evidence of a "significant verbegrogenic[2] condition."  (TR 20)  The ALJ conceded that Stacey has "some" neuropathy related to HIV, but found that it

---

[1] Dr. Robertson's notes from 12-14-11 (TR 487) state that he referred Stacey for EMG testing and it was to be scheduled.  The record does not include any results.

[2] This likely should be "vertebrogenic" condition, one involving the vertebra. "Radiculopathy" is a disorder of the spinal nerve roots.  Stedman's Medical Dictionary (28th Ed. 2006) at 1622.

was not so severe that it would be disabling.  The ALJ gave some weight to Dr. Robertson's October 2011 basic medical assessment (TR 666, Ex. 17F at 40), which he found to be consistent with light work and with the record as a whole.  He gave less weight to Dr. Robertson's mental assessment (TR 669, Ex. 17F at 43), because Dr. Robertson is not a mental health professional.  He also gave less weight to Robertson's "Medical Findings" form completed after Stacey's visit on April 9, 2013.  In that form (TR 715-716, Ex. 18F), Dr. Robertson stated that Stacey can stand for 4 hours with 10-15 minute breaks every 20 minutes; walk for one hour with 15-minute breaks; sit for 4 hours with stretch breaks at 30-minute intervals; lift 20 pounds every 2-3 hours; and is limited by numbness in his left hand and left leg.  Dr. Robertson stated that he has daily fatigue after three hours of sustained activity, and that he would likely need three or more 5-minute unscheduled breaks in a 40 hour work week.  The ALJ explained that he gave less weight to this assessment because Stacey's CD4 counts had improved and his viral load was reduced; therefore it appeared to the ALJ that Robertson's assessment was largely based on Stacey's complaints of fatigue.  He noted that Stacey's HIV/AIDS is "under reasonable control with medications and that the extent of any immunologic-related fatigue the claimant may experience is not so severe that he lacks sufficient stamina to work competitively."  (TR 20)

The ALJ gave "great weight" to the consulting examining psychologist, Dr. Berg, and to the state reviewing psychologist who agreed with Dr. Berg.  Dr. Berg noted Stacey's deficits in social functioning and stress tolerance, but the ALJ found those deficits were accommodated by the RFC restrictions he articulated.  The ALJ gave "little weight" to Stacey's therapist, Ms. Vondrell, finding her assessment was inconsistent

with her treatment notes that reflect "only moderate level depressive symptoms." The ALJ also stated that Vondrell is not an acceptable medical source. (TR 20) The ALJ concluded that the severity of Stacey's impairments and functional limitations was not supported by the medical evidence to which he gave credit. Stacey's medication side effects appear to be intermittent, and were inconsistent with his subjective reports.

A vocational expert testified at Stacey's hearing that there were jobs locally and nationally that he could perform within the ALJ's articulated RFC, such as packer, general factory worker, and cleaner. He also testified that if Stacey were restricted to sedentary work with the same non-exertional restrictions, he could perform jobs such as packer, inspector or assembler. If an additional restriction of only occasional use of his left hand was added, that restriction would preclude Stacey from all available jobs. (TR 52-54) The ALJ ultimately concluded, based on the entire record, that Stacey is not disabled.

After the Appeals Council denied review, Stacey filed his complaint in this case on October 28, 2014. He claimed that the ALJ erred in finding that he did not meet Listing 14.08K for HIV/AIDS; improperly concluded that he did not have "marked" limitations in social functioning; and improperly discounted the opinions of his treating medical professionals. He also claimed that the ALJ erred in articulating his residual functional capacity and rejecting his treating professionals' opinions about his functional limitations.

In her Report, the Magistrate Judge rejected Stacey's initial argument that the ALJ failed to fully address each subcategory of Listing 14.08A - K, because the decision adequately explained the ALJ's conclusion that Stacey did not satisfy any of those

subcategories.  The ALJ noted in particular Listing 14.08I, which requires HIV-related diarrhea lasting "for 1 month or longer, resistant to treatment, and requiring intravenous hydration, intravenous alimentation, or tube feeding."  The medical evidence clearly did not support a claim that Stacey satisfied that Listing.  Stacey argued that the ALJ found that he had "repeated manifestations of neuropathy and/or diarrhea," and "significant, documented symptoms" of fatigue and pain, which satisfied the first prong of Listing 14.08K.  The Magistrate Judge disagreed, because the ALJ did not specifically find that Stacey had "significant" symptoms, or "repeated" manifestations of any symptoms.  While the ALJ found that Stacey had "some neuropathy" and some chronic diarrhea that could satisfy the first part of the Listing, he also concluded that Stacey has only "mild" limitation of daily living activities, and "moderate" limitations in social functioning and in concentration, persistence or pace.  These "moderate" limitations did not satisfy the second part of Listing 14.08K, so any error regarding the first prong is harmless.

With regard to Stacey's functional capacity, the Magistrate Judge disagreed with Stacey's contention that the medical evidence of his limited social interactions mandates a finding of a "marked" limitation, or that the ALJ's RFC (restricting Stacey to "occasional brief superficial contact" with others) contradicted the ALJ's conclusions with respect to his social functioning.  She rejected Stacey's argument that the ALJ erred by relying on his interactions with his family to conclude that he has only "moderate" social limitations.  Stacey cites the preamble to Listing 14.08, which requires the Commissioner to find a "marked" limitation if a claimant has "... a serious limitation in social interaction on a sustained basis because of symptoms, such as pain, severe fatigue, anxiety, or difficulty concentrating, or a pattern of exacerbation and remission,

caused by your immune system disorder (including manifestations of the disorder) or its treatment, **even if you are able to communicate with close friends or relatives**." Listing 14.00I-7 (emphasis added)   Stacey argued that this section makes his interactions with his family and one friend "irrelevant" in determining if his limitations are "marked."  (Doc. 11, Statement of Specific Errors at 5.)  The Magistrate Judge found that the highlighted regulatory phrase "stands only for the proposition that a marked level of impairment may be found 'even if' the claimant is 'able to communicate with close friends or relatives.'" (Doc. 10 at 12)  In other words, this ability is but one factor used to evaluate the overall disability claim, and the Magistrate Judge found no evidence that the ALJ improperly weighed that ability in his overall analysis.

Stacey also argued that the ALJ erred in considering the medical opinion evidence, and in rejecting the opinions of his treating therapist (Vondrell) and physician (Robertson).  The Magistrate Judge disagreed, and found that the evidence supported the ALJ's conclusion of only moderate functional limitations.  Regarding Ms. Vondrell, Stacey argued that the ALJ ignored Social Security Ruling ("SSR") 06-3P in rejecting her assessment.  Vondrell has had regular therapeutic interactions with Stacey since 2008, but the Magistrate Judge observed that "most" of them occurred before Stacey's July 2011 application.  Stacey had reduced his sessions from weekly to bi-weekly shortly after that, and in 2012 reduced visits to once every three weeks.  The Magistrate Judge independently reviewed Vondrell's clinical notes, and cited various reports that at one point Stacey had a boyfriend, made friends at the library, attended a social function, was interested in music and movies, went shopping, used public transportation, and was able to get  help from a lawyer, a housing manager, and other assistance

programs. (See Doc. 10 at 14, citing record references to these observations.) The Magistrate Judge also cited the August 30, 2012 update to Stacey's individual service plan, in which Vondrell noted that Stacey had obtained stable housing, Medicaid and cash assistance, and that his "moods are much more stable with ongoing therapy and assistance ...". (Id. at 15) The Magistrate Judge found that the record as a whole supports the weight the ALJ gave to Vondrell's opinion.

She also found no error with respect to the ALJ's evaluation of Dr. Robertson's opinions. Dr. Robertson has treated Stacey for HIV/AIDS since his diagnosis, through the University of Cincinnati infectious disease program. Stacey argued that the ALJ's greater reliance on the state consultants (particularly Dr. Berg) was erroneous because they lacked access to Stacey's medical records that post-date their opinions, specifically Vondrell's clinical notes and Dr. Robertson's most recent assessments and visit notes. The Magistrate Judge found that most of those later records were not relevant to the issue of Stacey's social functioning. She conceded that the ALJ did not comply with Blakley v. Comm'r of Soc. Sec., 581 F.3d 399 (6th Cir. 2009) because he failed to expressly recognize and discuss the impact of the lack of those records on the consultants' opinions. But the Magistrate Judge found any resulting error to be harmless, because the ALJ had the records and considered them in reaching his decision. The ALJ did not "play doctor" as Stacey suggested; he reviewed and interpreted the medical evidence, a function well within the scope of his legitimate role.

Finally, the Magistrate Judge rejected Stacey's claim that the ALJ relied too heavily on descriptions of his daily activities. Stacey cited Gayheart v. Comm'r., 710 F.3d 365 (6th Cir. 2013), where the court observed that a claimant's ability to perform

some daily activities is not equivalent to an ability to perform sustained work. The Magistrate Judge noted the differences between the ALJ's decision in this case, and the decision at issue in <u>Gayheart</u>, and found no error. She therefore recommended that this Court affirm the Commissioner's decision.

Stacey timely filed objections to the Report and Recommendation. (Doc. 11) He contends that the Magistrate Judge and the ALJ misinterpreted the term "marked impairment" as used in Listing 14.08K, because the ALJ's other findings contradict his conclusion that Stacey has only "moderate" functional limitations. He also contends that the ALJ misapplied the definition of "marked impairment" incorporated in the HIV/AIDS listing. He objects to the Magistrate Judge's discussion of his treating physician's functional assessment, and to the conclusion that Vondrell's chart notes do not support her opinion that he has marked impairments in social functioning. He relies on SSR 06-3p (2006 SSR LEXIS 5), which provides that the opinion of non-accepted medical source such as a therapist, can outweigh the opinion from an "acceptable" medical source (such as a consulting examining physician) if the therapist has more contact with the claimant. He argues that Vondrell has had far more contact with him and is more familiar with his symptoms and limitations than Dr. Berg, who saw him once four years ago for a consultative examination.

## DISCUSSION

<u>Standard of Review</u>

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine if he applied the correct legal standards, and if the record as a whole contains substantial evidence to support that decision. "Substantial evidence means more than a mere

scintilla of evidence, such as evidence a reasonable mind might accept as adequate to support a conclusion." LeMaster v. Secretary of Health and Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted).  The evidence must do more than create a suspicion of the existence of the fact to be established.  Rather, the evidence must be enough to withstand a motion for a directed verdict when the conclusion sought to be drawn from that evidence is one of fact for the jury.  Id.

An ALJ's decision that is supported by substantial evidence must be affirmed, even if the Court would have arrived at a different conclusion based on the same evidence. Elkins v. Secretary of Health and Human Serv., 658 F.2d 437, 438 (6th Cir. 1981).  The substantial-evidence standard "... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The district court reviews de novo a Magistrate Judge's recommendations regarding Social Security benefits claims.  Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

Listing 14.08

Listing 14.00 governs immune system disorders, those that cause dysfunction in one or more components of the immune system.  HIV is one of three categories of immune disorder covered by this Listing.  For all such disorders, "constitutional symptoms or signs" are defined as "severe fatigue, fever, malaise, or involuntary weight loss.  Severe fatigue means a frequent sense of exhaustion that results in significantly

-13-

reduced physical activity or mental function. Malaise means frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function."

The Social Security Administration has promulgated a specific medical report form for HIV claimants (Form SSA-4814-F5) which tracks the language and various sub-categories of Listing 14.08. The instructions for Form SSA-4814 state in relevant part that it may be completed by a "physician, nurse, or other member of a hospital or clinic staff, who is able to confirm the diagnosis and severity of the HIV disease manifestations" based on a claimant's records. Dr. Robertson completed three of these forms, on September 20, 2011 (TR 346-349, Ex. 6F); December 2, 2011 (TR 351-353, Ex. 7F); and April 9, 2013 (TR 727-731, Ex. 20F). Section B of the form asks for confirmation of the HIV diagnosis. Section C is a checklist of "opportunistic and indicator diseases," many of which are identified in Listing 14.08(A) through (J). In his first two reports, Dr. Robertson checked the box for "Other neurological manifestations of HIV infection" which includes peripheral neuropathy with "significant and persistent disorganization of motor function in 2 extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station." On the third and most recent April 2013 Report, Dr. Robertson checked the box for "multiple or recurrent bacterial infections (requiring hospitalization or intravenous antibiotic treatment three or more times in one year)."

Section D(a) of the form then asks the physician or other treating professional to specify other repeated manifestations of HIV infection, instructing that a patient "need not have the same manifestation each time to meet the definition of repeated

-14-

manifestations...".   Section D(b) asks for an opinion whether the patient has a marked restriction in daily living, in social functioning, or in maintaining concentration, persistence or pace.   The instructions for this section state: "We do not need detailed descriptions of the functional limitations imposed by the illness; we just need to know whether your patient's ability to function has been affected to a "marked" degree in any of the areas listed."   The form defines a "marked" limitation: "... it means more than moderate, but less than extreme.  'Marked' does not imply that your patient is confined to bed, hospitalized, or in a nursing home.  A marked limitation may be present when several activities or functions are impaired or even when only one is impaired.  An individual need not be totally precluded from performing an activity to have a marked limitation, as long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately, and effectively."

On both the December 2011 and April 2013 forms, Dr. Robertson listed diarrhea as a specific manifestation of HIV (and which he noted was more frequent in 2011 than in 2013).  In 2011, Dr. Robertson noted Stacy's complaints of burning pain in his left leg that got worse with lifting and walking.  On the 2013 form he again identified left arm/leg pain as specific manifestations of HIV/AIDS.  On both forms Dr. Robertson found marked restrictions in daily living and in social functioning, noting Stacey's complaints of diarrhea that often interrupted his activities; daily pain in his left leg and left arm numbness; and his agitation and mood lability that regularly interfered with his social functioning.

In considering whether or not Stacey met or equaled Listing 14.08 (without delineating its subparts), the ALJ first found that he did not have any of the indicator

diseases that met or equaled Listings 14.08(A) through (J), a conclusion Stacey does not dispute.  The ALJ then stated that Stacey's diarrhea has not "required intravenous hydration, intravenous alimentation, or tube feeding."  Those treatments are required to meet Listing 14.08(I), not 14.08(K).  He went on to find: "There is no evidence that [Stacey] has had significant documented symptoms or signs (e.g., fatigue, fever, malaise, weight loss, pain, night sweats)...".  The ALJ thus apparently concluded that Stacey did not meet the requirements of the first part of 14.08(K).  But Dr. Robertson repeatedly documented symptoms of both diarrhea and pain, and the ALJ specifically found that Stacey's severe impairments include neuropathy.  Moreover, while discussing Stacey's functional limitations, the ALJ stated that Dr. Robertson "did not check that the claimant had neurological manifestations."  (TR 18)  But this is incorrect; Dr. Robertson did "check the box" for neurological manifestations on both the September 2011 and December 2011 forms, and he described those manifestations in his clinical office notes.

In discussing Stacey's reports of fatigue and left leg pain, the ALJ discounted them based on the fact that his HIV/AIDS is under "reasonable control" with medications.  (TR 20)  The ALJ did not specifically address whether those symptoms (and others that Stacey reported to Robertson) are caused or exacerbated by the same medications that improved Stacey's CD4 counts.  See, e.g., Buckhalter v. Barnhart, 2007 U.S. Dist. LEXIS 25702 (S.D. Indiana, March 12, 2007), rejecting an ALJ's conclusion that an HIV/AIDS claimant's improvement in his CD4 count was inconsistent with his claims of chronic diarrhea, because the HIV medications exacerbated his diarrhea.  The only specific side effects discussed by the ALJ are nausea and vomiting,

which he found to be adequately controlled such that Stacey would be able to maintain a "dependable work schedule."  (TR 19)

While the ALJ gave "some" weight to Dr. Robertson's assessments and opinions, he gave "great weight" to the single consultative examination by Dr. Berg, performed in September 2011.  Dr. Berg reported that Stacey was able to concentrate on the examination, and the ALJ concluded from the report that Stacey "could understand, remember, and carry out verbal instructions as well as both simple and 2 and 3 step job tasks.  Some deficits were noted in social functioning and stress tolerance but these are fully accommodated by the above restrictions."  (TR 20)  Stacey told Dr. Berg that he could use his arms and hands without difficulty, but also that "he was having some pain in his legs..." especially with bending, stooping, and lifting.  (TR 332)  Stacey told Dr. Berg that he spends his day at home, taking his medication, resting, watching TV, and that he has very few callers or visitors (TR 334), and very few social involvements.  (TR 337)  Dr. Berg found that Stacey was "fairly reliable" in reporting his symptoms and functional abilities, and that Stacey's self-reports demonstrated a "fair amount of consistency with referral information."  (TR 337)   Dr. Berg concluded that Stacey "would have at least some difficulty responding appropriately to work pressures in a work setting."  (TR 339)  But Dr. Berg did not quantify what he meant by "some difficulty" or "responding appropriately."  The ALJ simply concluded that his RFC would accommodate whatever degree of difficulty Dr. Berg believed to exist.

Moreover, Stacey argues that the ALJ's assessment of his limitations on social functioning were almost entirely supported by Stacey's descriptions of his interactions with his mother (who lives across the hall), telephone contact with his siblings, and a

-17-

friend.  The preamble to Listing 14.08 stresses that a marked limitation in social functioning should be based upon limitations caused by symptoms and manifestations of HIV/AIDS, "even if" Stacey can interact with family and close friends.  While the Court agrees with the Magistrate Judge that this language does not render those  interactions "irrelevant" to the analysis, the preamble does require the ALJ to significantly discount those interactions when considering a claimant's social limitations.  But aside from Stacey's family and one friend, the ALJ found that his ability to buy food and have "superficial contact" with individuals when he goes shopping or to medical appointments was enough to reject Vondrell's and Robertson's assessments.

If Stacey meets the requirements of a Listing, he is entitled to an award of benefits.  The ALJ did not expressly recognize Dr. Robertson's three separate reports, nor discuss his specific findings recorded on those reports.  The Sixth Circuit has held that an ALJ must address a listing where the evidence raises "a substantial question" whether a claimant could meet or equal the listing.  And a Social Security claimant who challenges an ALJ's decision with respect to a listed impairment "... must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing."  Smith-Johnson v. Comm'r of Soc. Sec., 579 Fed. Appx. 426, 432 (6th Cir. 2014).  The Court concludes that Stacey has pointed to specific medical evidence that raises a substantial question about whether he could meet or equal Listing 14.08K, based on the observations and opinions offered by his long-standing treatment providers Robertson and Vondrell.

Medical Opinion Evidence

This issue is closely related to Stacey's arguments concerning Listing 14.08K,

because both Dr. Robertson and Ms. Vondrell found that Stacey has at least one "marked" limitation in a functional area.   For purposes of Social Security disability evaluations, a treating physician's opinion will be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record[.]"  Rogers v. Commissioner of Social Sec., 486 F.3d 234, 242 (6th Cir. 2007).  The ALJ must identify specific reasons for discounting a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Id.  A pertinent regulation, 20 C.F.R. § 404.1527(c)(2), identifies factors the ALJ should address to determine the weight to be given to any opinion, including the length, nature and extent of the treating relationship; whether the opinion is supported by relevant evidence, and is consistent with the record as a whole; the specialization of the source; and any other factors that support or contradict the opinion.

The regulations further state that, in considering any medical opinion,"... the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion."  20 C.F.R. § 404.1527(c)(4).  More weight is generally given to an examining source than to a non-examining reviewer, but the weight accorded to any medical opinion must be based on the evidence that supports it, and its consistency with the record as a whole.

Stacey argues that the ALJ improperly discounted the opinions of his treating therapist, Lisa Vondrell.  He cites Soc. Sec. R. 06-03p (2006 SSR LEXIS 5), which explains how the Commissioner considers opinions from sources who are not defined

-19-

as "acceptable" medical sources, which generally includes licensed physicians.  Medical

sources who are not considered "acceptable" medical sources include nurse

practitioners, licensed clinical social workers, and therapists.  SSR 06-03p explains that

other Social Security regulations do not explicitly address how opinions and evidence

from such sources are to be considered:

> With the growth of managed health care in recent years and
> the emphasis on containing medical costs, medical sources
> who are not 'acceptable medical sources,' such as nurse
> practitioners, physician assistants, and licensed clinical
> social workers, have increasingly assumed a greater
> percentage of the treatment and evaluation functions
> previously handled primarily by physicians and
> psychologists.  Opinions from these medical sources, who
> are not technically deemed 'acceptable medical sources'
> under our rules, **are important and should be evaluated
> on key issues such as impairment severity and
> functional effects**, along with the other relevant evidence in
> the file. (emphasis added)

As noted above, the ALJ gave little weight to Vondrell's assessment, finding it

inconsistent with her progress notes reflecting "only moderate level depressive

symptoms."  (TR 20)  The ALJ cited Vondrell's report that Stacey had been compliant

with treatment, and that during therapy sessions he was "verbal, cooperative, and

utilized his time appropriately and effectively."  (TR 20, citing TR 241, Ex. 9E, Vondrell's

April 12, 2012 letter.)  The ALJ then stated that Vondrell is not an acceptable medical

source, without discussing her role as long-standing therapist or how her opinions did or

did not conflict with Dr. Berg's and Dr. Robertson's.  The ALJ discounted her opinion

about Stacey's functional limitations by noting that he was compliant with his treatment,

and was verbal during therapy sessions.  The Magistrate Judge found no error in the

ALJ's analysis because "most" of Stacey's interactions with Vondrell took place before

-20-

his July 2011 disability application. The Magistrate Judge also noted inconsistencies between Vondrell's opinion that Stacey has "extreme" limitations in three functional areas, and "marked" limitations in five additional areas. (Doc. 10 at 15, citing TR 606-607, Vondrell's January 18, 2013 Mental Impairment Questionnaire.) Vondrell reported that Stacey had repeated episodes of decompensation, which the Magistrate Judge noted lacked record support. However, with respect to Vondrell's opinions on Stacey's functional capacities, the form itself defines "marked" as "ability to function in this area is seriously limited, but not precluded." Vondrell opined that Stacey was extremely limited in his ability to "relate predictably in social situations," and was markedly limited in his ability to respond appropriately to changes at work, in dealing with the stress of getting to work regularly and remaining at work for a full day, and in maintaining social functioning. The form states that impaired social functioning "may be demonstrated by a history of social isolation, altercations, evictions, firings, fear of strangers, or inappropriate response to persons in authority or uncooperative behavior involving co-workers." (TR 607) The fact that many of Vondrell's interactions with Stacey took place before he applied for benefits does not necessarily make those interactions completely irrelevant to an assessment of Vondrell's opinions. Many of the notes cited by the Magistrate Judge reflect incidents such as Stacey being able to leave his apartment and seek help to avoid having his utilities shut off; another time he discussed finding a lawyer with Vondrell. The reference to "social activities" appears to encompass meals with his family, a once-a-year dinner for AIDS volunteers, and going to the library on occasion. Vondrell's longitudinal relationship with Stacey would arguably favor a greater weight given to her observations and conclusions, rather than the slight weight

accorded by the ALJ.

The same observation applies to Dr. Robertson, Stacey's treating infectious disease physician.  The Magistrate Judge described Robertson's December 2, 2011 assessment as "cursory."  (Doc. 10 at 15, citing TR 353)   But the form itself does not seek nor require extended reporting from the medical provider.  And Robertson's contemporaneous chart notes from a November 4, 2011 "comprehensive visit" state that Stacey complained about leg pain ("constant aching, burning gnawing pain" that gets worse with walking long distances or activity, or lifting more than 5 pounds); loose stools causing accidents, and "malaise" when he takes his medications.  (TR 461, Ex. 9F)  At the December 14, 2011 office visit, Stacey again complained of side effects from his medications (headache, whole body pain, nausea, emotional outbursts), and "gnawing, achy" left leg pain and left arm numbness.  (TR 469-470, Ex. 9F)  The ALJ also rejected Dr. Robertson's mental assessment because Robertson is not a mental health professional.  (TR 20)  As noted above, the HIV/AIDS assessment form specifically states that any health care professional may complete the form if the provider "is able to confirm the diagnosis **and severity** of the HIV disease manifestations." (emphasis added)  In view of the treatment history and length of relationship between Stacey and Dr. Robertson, the Court finds the ALJ's outright rejection of Dr. Robertson's opinions about Stacey's limitations was erroneous.

Stacey argues that this Court should vacate the ALJ's decision and remand for an award of benefits.  The Sixth Circuit has held that benefits may be awarded by the Court if there are no unresolved factual issues, "the proof of disability is strong, and opposing evidence is lacking in substance, so that remand would merely involve the

presentation of cumulative evidence, or where the proof of disability is overwhelming."
Kalmbach v. Comm'r of Soc. Sec., 409 Fed. Appx. 852, 865 (6th Cir. 2011)(internal
quotations omitted).  The Court cannot conclude that the facts are resolved, or that
proof of Stacey's disability is "overwhelming."  The Court therefore rejects Stacey's
argument, and will remand this matter for a re-determination of whether Stacey meets
Listing 14.08K, and fresh consideration of his treating providers' opinions as to his
functional limitations.  If additional information is needed, the ALJ is free to obtain any
additional medical evidence necessary to determine whether Stacey can meet Listing
14.08K.

## CONCLUSION

For all of the foregoing reasons, the Court declines to adopt the Report and
Recommendation of the Magistrate Judge.  Stacey's objections to that Report are
sustained in part. The Court concludes that he has raised a substantial question
whether the ALJ erred in finding that Stacey's impairments did not meet or equal Listing
14.08K, and in considering the weight to be given to the opinions of Stacey's treating
physician and therapist.  The final decision of the Commissioner is vacated, and this
matter is remanded to the Commissioner for further consideration of these issues.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: November 13, 2015                    s/Sandra S. Beckwith
                                            Sandra S. Beckwith, Senior Judge
                                            United States District Court