UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES STACEY,                           Case No. 1:14-cv-842

         Plaintiff,                      Beckwith, J.
                                          Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

**REPORT AND RECOMMENDATION**

**I. Background**

Plaintiff James Stacey filed an application seeking social security benefits in July 2011, alleging a disability onset date of April 2007 based in part upon his diagnoses of HIV/AIDS, neuropathy, and depression. His application was denied initially and after a hearing before an administrative law judge (ALJ). The ALJ issued a written decision that Stacy has severe impairments but found that he retained the residual functional capacity to perform light work with additional limitations. Plaintiff filed a judicial appeal in this Court.

Following review of the administrative record, the undersigned filed a Report and Recommendation (Doc. 11) that recommended affirming the ALJ's decision. The undersigned concluded that the ALJ's decision was supported by substantial evidence in the record as a whole, despite the existence of harmless error concerning the failure of the ALJ to fully discuss the impact of certain medical records.

Plaintiff filed objections to the R&R, to which the Commissioner failed to respond. On November 13, 2015, the presiding district judge sustained the objections in part and

rejected the R&R, remanding this case to the Commissioner for further administrative review.

On February 1, 2016, Plaintiff moved for an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. §2412(d). The Defendant has filed a response objecting to the fee award sought by counsel, to which Plaintiff has filed a reply. I now recommend that Plaintiff's motion be granted, but with a slight reduction to the total claimed fee award.

## II. Analysis

Because their clients are frequently indigent, attorneys who practice in the area of social security often seek compensation for their work under one of two statutory provisions that provide for an award of fees. The EAJA is one such provision,[1] providing for an award to any "prevailing party" of "fees and other expenses…in any civil action…brought by or against the United States." 28 U.S.C. §2412(d)(1)(A). Fees generally are awarded as long as the position of the Commissioner was not "substantially justified." *Id*., at §2412(d)(1)(B). The decision of the trial court to grant or deny fees under the EAJA is discretionary, and is reviewable only for an abuse of that discretion.

The Commissioner argues that Plaintiff, while a prevailing party, is not entitled to fees because the Commissioner's legal position was in fact "substantially justified." In

---

[1] A second provision is contained in the Social Security Act itself, 42 U.S.C. §406. Section 406(a) compensates work performed during administrative proceedings, while §406(b), like the EAJA, compensates work performed in court. Fees under §406(b) are usually higher than EAJA awards, because they are calculated as a percentage of benefits. Because double-recovery for the same work is not permitted, an attorney who subsequently recovers a fee under §406(b) will be required to remit the lesser (usually EAJA) fee to his client.

the alternative, the Commissioner seeks a reduction of the fee award sought.

### A. The Meaning of "Substantially Justified"

The Commissioner opposes the award of any fee under the EAJA on grounds that its position was "substantially justified." The government's position is substantially justified if it is "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)(internal citations omitted). "[A] position can be justified even though it is not correct, and …it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.* at 566, n.2. The inquiry on appeal – whether the underlying denial of benefits was supported by "substantial evidence" -- is separate and distinct from the issue of whether the United States was "substantially justified" in defending the ALJ's decision. Thus, the fact that a court concludes that remand is appropriate, based upon a lack of substantial evidence to affirm the Commissioner's decision, does not mandate a conclusion that the legal position of the United States was not "substantially justified." *Couch v. Sec'y of HHS*, 749 F.2d 359, 360 (6th Cir. 1985).

The Commissioner argues that its position was substantially justified here, because the undersigned magistrate judge reached a different conclusion (to affirm the ALJ) than reached by the presiding district judge (who rejected the R&R in favor of remand). The government notes that such judicial disagreement can be one "objective indicia" in the substantial justification analysis. *Segers v. Astrue*, 622 F. Supp.2d 249, 254 (E.D. Pa. May 8, 2009)(citing *Pierce v. Underwood*, 487 U.S. 552, 569 (1988)); *see*

3

*also Gray v. Com'r of Soc. Sec.*, 23 Fed. Appx. 436, 437 (6th Cir. 2001)(unpublished, affirming denial of EAJA fee, reasoning that disagreement between magistrate judge and district judge "lends credence to the Commissioner's position that a reasonable person could believe that the denial of benefits was correct"); *White v. Com'r of Soc. Sec.*, 2009 WL 3498232 at *1 (W.D. Mich. Oct. 26, 2009)(denying fee where magistrate judge, district judge, and appellate court reached a variety of conclusions, illustrating that the issue was "a matter on which reasonable people can disagree.").

The conundrum posed by the undersigned's review of this argument is immediately apparent. The prior R&R recommended affirming the Commissioner's decision as supported by "substantial evidence" in the record as a whole. If defining whether the Commissioner's position before this Court was "substantially justified" rests on whether a "reasonable person" would find "a reasonable basis in law and in fact" for that position, then the fact that I previously recommended affirming the Commissioner's position supports the Commissioner's argument. A contrary finding would seem to suggest that the undersigned's own prior analysis was "unreasonable" or not supported by "a reasonable basis in law and in fact."

Fortunately, however, there is wide margin for discretion in the award of EAJA fees, and the prior disagreement between the undersigned magistrate judge and the presiding district judge is only one element to consider. *See Segers*, 622 F. Supp.2d at 254 ("Obviously the fact that one other court agreed or disagreed with the government does not establish whether its position was substantially justified."); *see also Howard v. Barnhart*, 376 F.3d 551 (6th Cir. 2004)(granting EAJA award despite decisions by both

4

magistrate judge and district judge to affirm, holding that while lower court decisions "might be indicative" of reasonable belief, the lower court decisions did not "exclusively establish whether the Commissioner's decision is "substantially justified.").

Thus, the mere fact that I previously found the Commissioner's decision to be supported by substantial evidence - even if I believe that view to have been reasonable at the time - does not necessarily mean that the Commissioner's defense was "substantially justified."[2] In determining that it was not, I rely more heavily on the final decision of the presiding district judge. Additionally, I recommend the exercise of the Court's discretion in favor of an EAJA award based on the fact that it is the Commissioner's burden to prove that its defense was "substantially justified," and the strong custom and practice of this Court to award EAJA fees in the vast majority of remanded cases.

**The District Court's Decision**

In the underlying appeal seeking remand, Plaintiff argued that the ALJ erred by failing to find that his HIV/AIDS was of Listing Level severity. Alternatively, he argued that the ALJ failed to properly apply the treating physician rule when he rejected the opinions of both his treating physician and a long-term therapist.

In the R&R rejecting those arguments, the undersigned first rejected several arguments relating to whether Plaintiff met or equaled Listing 14.08 (A) through (J).

---

[2]Most Sixth Circuit case law focuses on whether the legal defense of the Commissioner in district court is "substantially justified." Although some case law broadens the question to consider whether the position of the Commissioner at both the administrative level and during the judicial appeal was "substantially justified," *see Segers, supra*, I favor the former approach. After all, EAJA fees are recoverable only for attorney time expended in district court.

5

Stacey did not object to that portion of the R&R's analysis.

The undersigned next rejected Plaintiff's contention that he met or equaled the "catch-all" provision of Listing 14.08(K). (Doc. 10 at 9-10). However, Judge Beckwith sustained Plaintiff's objections to the extent that the record supported the possibility that Plaintiff's physical and mental symptoms could meet Listing 14.08K. "The Court concludes that Stacey has pointed to specific medical evidence that raises a substantial question about whether he could meet or equal Listing 14.08K, based on the observations and opinions offered by his long-standing treatment providers Robertson and Vondrell." (Doc. 12 at 18). The Court held that the ALJ also erred by failing to "significantly discount" Plaintiff's social interactions with family and close friends, when considering the extent of his social limitation under Listing 14.08K.

In addition to determining that remand was required to reconsider the listing determination, Judge Beckwith found that remand was required to re-assess the opinions of Plaintiff's treating physician and therapist. In the R&R, the undersigned had concluded that substantial evidence supported the ALJ's rejection of the therapist's opinions in part based upon the decline in frequency of treatment over time, and because:

> records reflect that Plaintiff had a boyfriend, was able to make new friends at the library, attend social functions, had interests in music and movies, was able to go shopping, use public transportation, and seek help from third parties, including a lawyer, a housing manager, and assistance programs. (Doc. 7 at 8-9, quoting Tr. 365-66, 374, 377, 379, 380, 382, 383, 394, 397, 404, 407, 412, 415, 421, 433, 439, 443, 451, 586). Thus, the record as a whole supports the ALJ's conclusion that Ms. Vondrell's opinion that Plaintiff has "marked" social limitations is "not consistent with her progress notes." Based upon the undersigned's review, the ALJ's

6

> analysis is supported by substantial evidence in the record as a whole. Ms. Vondrell's notes simply do not provide any significant support for her assessment that Plaintiff suffers from "marked" impairment in social functioning.

(Doc. 10 at 14, internal footnote omitted).

However, Judge Beckwtih reasoned that remand was required due to the ALJ's failure to adequately discuss the long-standing nature of the treatment relationship or how the therapist's opinions did or did not conflict with Dr. Berg's and Dr. Robertson's opinions, as required by SSR 06-03p. "Many of the notes cited by the Magistrate Judge reflect incidents such as Stacey being able to leave his apartment and seek help to avoid having his utilities shut off; another time he discussed finding a lawyer with Vondrell….Vondrell's longitudinal relationship with Stacey would arguably favor a greater weight given to her observations and conclusions, rather than the slight weight accorded by the ALJ."  (Doc. 12 at 21-22).  For similar reasons, the Court found substantial evidence did not support the ALJ's rejection of the opinions of Plaintiff's treating physician.  "[T]he Court finds the ALJ's outright rejection of Dr. Robertson's opinions about Stacey's limitations was erroneous."  (Doc. 12 at 22).

Despite errors warranting remand, Judge Beckwith did not find that the Court should direct an award of benefits.  "The Court cannot conclude that the facts are resolved, or that proof of Stacey's disability is 'overwhelming.'  The Court therefore…will remand…for a re-determination of whether Stacey meets Listing 14.08K, and fresh consideration of his treating providers' opinions as to his functional limitations."  (Doc. 12 at 23).

7

Based primarily on the reasoning expressed in this Court's final decision, the undersigned concludes that the Commissioner has failed to carry its burden to prove that its defense of the ALJ's decision was "substantially justified." *Accord Spiller v. Com'r of Soc. Sec.*, 940 F. Supp.2d 647 (S.D. Ohio 2013)(concluding that government position was not "substantially justified" in view of ultimate Court decision that rejected report and recommendation to affirm the ALJ's decision).

Precedent also supports the exercise of discretion in favor of award of EAJA fees in the vast majority of social security cases involving remands in the Sixth Circuit. *See, e.g., Turner v. Com'r of Soc. Sec.*, 680 F.3d 721, 724 (6th Cir. 2012)(discussing policy reasons in favor of the award of EAJA fees based upon remand orders alone); *see also, Glenn v. Com'r of Soc. Sec.*, 763 F.3d 494. 499 (6th Cir. 2014)(reversing denial of EAJA fees as abuse of discretion where remand was based on substantive rather than procedural error, including a selective consideration of the evidence and errors that "were plainly contrary to law."); *Bass v. Colvin*, 120 F. Supp.3d 697 (N.D. Ohio 2015)(Commissioner's position opposing remand not substantially justified due to error-ridden RFC determination, notwithstanding court's rejection of some errors); *Cowart v. Com'r of Soc. Sec.*, 795 F. Supp.2d 667, 670 (W.D. Mich. 2011)(rejecting argument that based upon statement in opinion remanding that "there is medical evidence in this record that might support a finding of non-disability," because "to accept the Commissioner's reasoning would be inconsistent with the rule that a plaintiff who wins a Sentence Four remand is a 'prevailing party,' and thus entitled to EAJA fees, without regard to whether he or she ultimately prevails on remand."); *Pyatt v. Com'r of Soc.*

8

*Sec.*, 771 F. Supp.2d 891, 898-902 (S.D. Ohio 2011)(finding Commissioner's defense of clear procedural error, and alternative contention that the error was harmless, was not substantially justified).

One recent Sixth Circuit case provides additional food for thought, but does not persuade the undersigned to recommend the denial of an EAJA award. In *DeLong v. Com'r of Soc. Sec.*, 748 F.3d 723 (6th Cir. 2014), the Sixth Circuit affirmed the denial of EAJA fees where remand was based solely on the same procedural error as in *Pyatt* – the failure of the ALJ to articulate "good reasons" for the weight he gave the opinions of treating physicians. Of particular note, the Sixth Circuit quoted with apparent approval the trial court's observation that "in the vast majority of cases, a position defending a final administrative decision despite its imperfections will be justified"). *Id.* at 728. Aside from the fact that the quotation is dictum, however, the Sixth Circuit's subsequent decision in *Glenn* retreats the suggested inference. In reality, both published and unpublished case law strongly supports a contrary inference: that in the vast majority of social security cases, EAJA fees are awarded whenever a plaintiff wins remand. Thus, EAJA fees have been awarded even in most cases in which the government actively opposes an award on grounds that its position was substantially justified. A fee award on the record presented is consistent with that body of case law.

**B. The Reasonableness of the Fee**

Determining what is a "reasonable" fee necessarily involves the exercise of some discretion, both by the billing attorney and by this Court. *See* 28 U.S.C. §2412(d)(1)(D)(limiting award to "reasonable attorney fees" including "prevailing market

9

rates for the kind and quality of the services furnished."); *Commissioner v. I.N.S. v. Jean*, 496 U.S. 154, 165-166 (1990)(The EAJA "provides district courts discretion to adjust the amount of fees for various portions of the litigation, guided by reason and statutory criteria."). Under the express language of the EAJA, it is the Plaintiff's burden to prove that the fees requested under the EAJA are, in fact, "reasonable." *See also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The Commissioner argues that Plaintiff's claimed fee, representing 64.7 hours of attorney time, is not reasonable. The Commissioner asserts both a specific objection to the hourly rate, and a more general objection to the overall fee on grounds that it far exceeds more typical EAJA fee awards. For the reasons explained herein, the undersigned recommends a small reduction to the claimed fee award.

### 1. Hourly Rate

The statutory hourly rate for an EAJA award is $125.00 per hour. However, this Court has frequently awarded much higher hourly rates in recognition of the increase in the cost of living, so long as properly supported. *See Bryant v. Com'r of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009). Here, Plaintiff initially sought an hourly rate of $185.60. In its memorandum in opposition, the Commissioner does not object to a rate increase based upon the evidence submitted by Plaintiff, but advocates for the rate of $184.75. In his reply, Plaintiff concedes the propriety of $184.75, which this Court accepts as a "reasonable" hourly rate.

### 2. Typical EAJA Fee Awards and the Number of Hours Expended

The referenced hourly rate adjustment would have little overall effect on the total

10

fee award, standing alone. However, the Commissioner more broadly objects to the high amount of fees sought in this case. Plaintiff seeks a total fee award of $12,389.00, representing 64.7 hours of attorney time, which includes time spent on the reply memorandum in support of the fee petition, plus the $400.00 filing fee. (Doc. 16). The total fee sought is based upon the simple mathematical construct of hours expended multiplied by the claimed hourly rate. This "lodestar" method is generally accepted as reflecting "most, if not all, of the factors relevant to determining a reasonable attorney's fee." *Glass v. Sec'y of HHS*, 822 F.2d 19, 21 (6th Cir. 1987)(quoting *Coulter v. State of Tennessee*, 805 F. 2d 146, 149 (6th Cir. 1986)).

In support of its argument that the overall claimed fee is unreasonably high, the Commissioner quotes dictum in *Astrue* v. *Ratliff*, 130 S. Ct. 2521, 2530 (2010)(Sotomayor, J., concurring), that references the average EAJA award as falling within a range of $3,000 to $4,000,[3] in part because "Social Security appeals are among the simplest types of litigation brought in the Federal Courts." By contrast, the fee sought in this case is more than three times the upper end of that range. Although Plaintiff protests that the reference is to an outdated study of EAJA awards, a more recent survey of cases by the undersigned confirms relatively little change over time, due in large part to the fact that the number of attorney hours spent on any social security case continues to fall within a fairly narrow range.

"Unlike other types of civil cases in which the amount of discovery alone often creates wide variability in litigation hours, the vast majority of social security appeals

---

[3]In *Astrue v. Ratliff*, 130 S. Ct. 2521 (2010), the total amount claimed was just $2112.

11

conform to a relatively narrow range of hours because they involve a largely settled area of law, require no discovery, and follow a precise briefing schedule." *Crim v. Com'r of Soc. Sec.,* Case No. 1:11-cv-137-SJD, 2013 WL1063476, at *4 (S.D. Ohio, March 14, 2013), adopted 2013 WL 3367337 (July 5, 2013).

Much of the prior analysis in *Crim,* which reduced a similar request for an unusually high EAJA award, informs the undersigned's reasoning in this case. In *Crim*, the undersigned surveyed cases that reflected average EAJA awards by both the undersigned and by the presiding district judge assigned to that case (Dlott) between 2008 and 2013. The Court also pointed out that the unusually high fee award sought in *Crim* "appears to be greater than the EAJA awards listed in all published social security cases within the Sixth Circuit over the last decade." *Id. at *3* (collecting cases).

A survey of published EAJA cases since *Crim,* including cases cited under the "substantial justification" analysis above, confirms that EAJA awards have remained largely static over time, with upward trends primarily the result of increases in the hourly rate, as opposed to any change in the number of hours expended.[4] *See e.g., Steele v. Com'r of Soc. Sec.*, 989 F. Supp.2d 686 (S.D. Ohio 2013)(awarding fee of $4690 for 24.8 hours at $175 per hour); *Gunther v. Com'r of Soc. Sec.*, 943 F. Supp.2d 797 (N.D. Ohio 2013)(6,106 for 33.7 hours of work).

Given the relatively minor disagreement with the hourly rate, the primary issue in

---

[4] Plaintiff's counsel points out that in *Strole v. Com'r of Soc. Sec.*, 1:13-cv-929 (S.D. Ohio 2015)(Black, J.), counsel was awarded a significantly higher total EAJA fee than that claimed here, for a total of $14,412.00. However, aside from the fact that *Strole* is unpublished, it appears to be a statistical anomaly.

this case is the unusually high number of hours expended.  The undersigned concludes that those hours should be slightly reduced.

While surveying other cases provides some guidance on what constitutes a "reasonable" fee award, the undersigned recognizes that no survey of case law can provide definitive limits.  Each case is fact-specific, just as each lawyer may apply his or her individual approach.

> In addition to fact-driven characteristics that influence the amount of research and writing time required, no social security grid-like rule can fully account for human variations in the time it takes to complete a given task.  While part of these differences may be attributed to attorney experience, more personal qualities also play a role.  One attorney may be prone to exhaustive legal research in every case, while another may be satisfied with his or her familiarity with the law, with minimal research only to update that knowledge.  One lawyer may draft his Statement of Errors painstakingly, requiring many hours to refine even a short memorandum, while another may have a knack for articulating salient points quickly, and supporting them with standard law.  In that respect, a winning memorandum may take one attorney 6 hours to complete, while requiring three times that amount of time by a peer of equal experience.  In cases in which an attorney's fee is authorized by the EAJA, the vexing question then becomes, to what extent should the attorney who is more painstaking in his or her approach be compensated?  Are all hours to be deemed "reasonable" so long as they were accurately and contemporaneously recorded?  If a case requires a particular attorney 50 or 60 hours to complete that would have taken a comparably experienced attorney less than half that time, what is required to prove that the unusually high number of hours was "reasonable"?

*Crim,* 2013 WL1063476 at *4 (internal footnote omitted).

> In the end, while individualized discretion must be employed, the EAJA permits compensation only for a "reasonable" fee that take into account "prevailing market rates."  Both the number of hours expended *and* the claimed hourly rate make up the "prevailing market rate" in the context of social security appeals filed in federal court.

*Id.*  In other words, "notwithstanding the subjective qualities of both the case and

13

counsel that will result in a compensable *range* of hours in any given case, some level of objectivity is required" to determine a "reasonable" EAJA fee award. *Id.* at 5.

> In this district, an average range of fifteen to forty hours is an appropriately objective guideline that should inform judicial discretion in determining a "reasonable" number of hours for most fee awards in social security appeals, to the extent that analysis of the characteristics of an individual case confirms that it should fall within normative values. In truth, most cases are likely to be completed within thirty hours.

*Id.* (internal footnote omitted).

In *Crim*, the undersigned reduced the claimed number of hours from 64.8 to 40, emphasizing that forty hours was "the high end of what has been described as an average range" in the Sixth Circuit. *See Glass v. Sec'y of HHS,* 822 F.2d at 21 (suggesting an upper limit of 30 hours); *Spiller v. Com'r of Soc. Sec.*, 940 F. Supp.2d at 651-652 (reducing hours from 40 to 32, acknowledging that no "firm, bright-line rule" can be applied, but also recognizing "inefficient litigation practices" and that only unusual social security appeals "of advance[d] complexity" would require the expenditure of "40 hours or more."). Here as in *Crim*, Plaintiff has failed to carry his burden of demonstrating that the entirety of his unusually high EAJA fee is "reasonable," considering all relevant individual characteristics that both this case and counsel's time entries require.

For example, in reviewing the billing records, the undersigned finds that the initial expenditure of 22.7 hours, to prepare the initial Statement of Errors, was slightly excessive. One hour reflects time billed prior to the filing of the complaint.[5] And

---

[5] The filing of the complaint traditionally triggers work compensable under the EAJA, whereas 42 U.S.C.

14

although the overall time is within the normative range, the 12-page Statement of Errors was much shorter than average, and contained only two closely related assertions of error. *Compare Crim*, 2013 WL 1063476 at *7 (noting that an 18 page Statement is "remarkably average."). This was not a unique or complex case, insofar as the primary error asserted was the most common seen by this Court. *See id.* (observing that the issues requiring reversal, including the failure to accord the opinion of the treating physician controlling weight and over-reliance on the opinion of a non-examining consultant who had not reviewed complete records, "are among the most common presented in the majority of social security cases that this Court reviews."). As in *Crim*, counsel represented Plaintiff at the administrative level, meaning that he was already familiar with that record.

Counsel's records reflect some time spent consulting with several outside attorneys. While counsel did not bill separately for that outside counsel's time, at least 4.2 hours were charged to rewrite briefs to incorporate outside counsel's comments. Considering the large expenditure of overall time and that lead counsel has decades of experience in social security cases, the undersigned is hard pressed to find such additional time to be reasonable. In addition, the 10 hours spent on Plaintiff's 7-page reply brief, including 2 hours to rewrite the brief to incorporate the suggestions of outside counsel, appears unusually high, given the limited nature of the arguments presented. *Compare Brown v. Com'r of Soc. Sec.*, 2011 WL 5595931 (S.D. Ohio, Oct.

---

§406(a) provides compensation for work prior to suit, during administrative proceedings. *See Melkonyan v. Sullivan*, 501 U.S. 89, 94 (1991)("Section 504...is the only part of the EAJA that allows fees and expenses for administrative proceedings conducted *prior to the filing of a civil action*.")(emphasis added).

7, 2011)(reducing claimed hours (27.5) and noting that 5 hours was an "excessive amount of time for preparation of the reply brief"). Thus, considering the total of 32.7 hours billed for the Statement of Errors and reply, the undersigned finds that Plaintiff has proved no more than 28 hours to have been "reasonable."

After the undersigned issued her Report and Recommendation, counsel filed 18 pages of Objections, plus exhibits. He spent approximately 22 hours reviewing the R&R and drafting those objections, including edits based upon outside counsel's review. That number also appears excessive, warranting an overall reduction to 18 hours. While still high for time spent on objections to an R&R, the undersigned concludes that 18 hours is within a "reasonable" range of hours and reflects an appropriate exercise of discretion.

Finally, the number of hours spent on Plaintiff's motion for EAJA fees and subsequent briefing totals 10.3. The undersigned recommends that the number of hours spent on the fee petition and reply be reduced to 6, based upon the undersigned's general review and knowledge of similar fee petitions to which an opposing memorandum has been filed.

The above analysis of the specific characteristics of this case finds not all of the claimed hours to be objectively "reasonable." Nevertheless, Plaintiff has shown his entitlement to a significantly higher EAJA fee than that typically awarded even for the upper limits of an "average" social security case in the Sixth Circuit. This atypically high award is recommended - not because of any complexity of the underlying case, which was overall less complex than average - but primarily because of Plaintiff's reasonable

16

expenditure of additional time on objections to the R&R. In sum, the undersigned finds that a "reasonable" EAJA fee award to be one that reflects 52 hours at $184.75, encompassing no more than 28 hours for the underlying Statement of Errors and Reply, 18 hours for objections, and 6 hours for the fee petition.

In concluding that some reduction is required, the Court emphasizes its respect for the personal prerogative of every attorney to spend the time that he or she believes a particular case warrants, as well as the subjective qualities of counsel (or an individual client) that may result in a particular attorney spending much greater than the number of hours that is typical for a given task, or on a given case. However, the fee award in this case is constrained by the EAJA's objective component of "reasonableness" rather than any subjective opinion concerning the competence of counsel.

### C. Fee Award to Plaintiff, not Counsel

The Supreme Court held in *Astrue v. Ratliff* that the EAJA provides for fees to be paid to Plaintiff, not Plaintiff's counsel. *Id.* at 2525. Whether a particular plaintiff owes a debt to the United States, and whether a plaintiff has made a valid contractual assignment of a fee award to counsel, are issues that ultimately may impact a particular plaintiff's receipt of an EAJA fee award, but are not issues presently before this Court.

"[U]nder *Ratliff*, the proper course is to award fees directly to plaintiff and remain silent as to the direction of those fees." *Oliver v. Com'r of Soc. Sec.*, 916 F.Supp.2d 834, 838 (S. D. Ohio 2013)(collecting cases); *see also Cox v. Astrue*, 917 F. Supp.2d 659 (E.D. Ky. 2013)(holding that under *Ratliff*, fees should be paid to litigants regardless of whether the Commissioner shows that the plaintiff owes a federal debt or not). The

17

fee award authorized by this Report and Recommendation neither bars the United States from honoring a valid assignment, nor prevents it from disputing it.

### III. Conclusion and Recommendation

For the reasons discussed herein, **IT IS RECOMMENDED THAT**:

1. Plaintiff's motion seeking a fee award under the EAJA (Doc. 14) should be GRANTED in part;

2. Plaintiff should be awarded the total sum of $10,007.00, representing an attorney fee ($9,607.00) that reflects a reasonable number of hours (52) at a reasonable hourly rate ($184.75), plus $400.00 in reimbursement of the filing fee.

 *s/ Stephanie K. Bowman*
 Stephanie K. Bowman
 United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JAMES STACEY,                                              Case No. 1:14-cv-842

        Plaintiff,                                        Beckwith, J.
                                                          Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).